**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VICTORY INTERNATIONAL (USA) INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PERRY ELLIS INTERNATIONAL, INC., | : |
| GEORGE FELDENKREIS, RENE GARCIA, | : |
| PARLUX FRAGRANCES, INC., ILIA | : |
| LEKACH, FRANK A. BUTTACAVOLI, | :  **OPINION** |
| QUALITY KING DISTRIBUTORS, INC., | : |
| QUALITY KING FRAGRANCE, INC., E | :  Civil Action No. 07-0375 (WHW) |
| COM VENTURES, INC., PERFUMANIA | : |
| INC., MODEL REORG, INC., GLENN | : |
| NUSSDORF, DFA HOLDINGS, INC., | : |
| DUTY FREE AMERICAS, INC., FALIC | : |
| FASHION GROUP, LLC, SIMON FALIC, | : |
| and JEROME FALIC , | : |
| | : |
| Defendants. | : |
| | : |

**Walls, Senior District Judge**

Defendant Glenn Nussdorf ("Nussdorf") moves to dismiss the Complaint for lack of

personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  Defendants Perry Ellis International

Inc. ("Perry Ellis") and George Feldenkreis ("Feldenkreis") (collectively, the "Perry Ellis

defendants") move to dismiss the Complaint for improper venue pursuant to Fed. R. Civ. R.

12(b)(3) or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1631, 28 U.S.C. § 1406(a) or

28 U.S.C. § 1404(a).  Defendants Parlux Fragrances, Inc. ("Parlux"), Ilia Lekach ("Lekach") and

Frank A. Buttacavoli ("Buttacavoli") (collectively, the "Parlux defendants") separately move to

dismiss the Complaint for improper venue, or alternatively, to transfer venue pursuant to 28

**NOT FOR PUBLICATION**

U.S.C. § 1631, 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).  Defendants Duty Free Americas,

Inc. ("Duty Free"), DFA Holdings, Inc. ("DFA"), Falic Fashion Group, LLC ("Falic Group"),

Simon Falic and Jerome Falic (collectively, the "Duty Free defendants") also separately move to

dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6), or, alternatively, to

transfer venue pursuant to 28 U.S.C. § 1404(a).  On October 12, 2007, defendants Quality King

Distributors, Inc. ("Quality King"), Quality King Fragrances, Inc. ("QKF"), E Com Ventures,

Inc. ("E Com"), and Perfumania Inc. ("Perfumania") joined the pending motions to transfer this

action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).[1]  The Court grants

defendant Nussdorf's motion to dismiss for lack of personal jurisdiction without prejudice.  The

Court also grants the Transfer Defendants' three motions to transfer[2] this action to the United

States District Court for the Southern District of Florida ("Florida").

## FACTS AND PROCEDURAL HISTORY

Plaintiff Victory International (USA) LLC ("Victory") is a limited liability

company organized and existing under the laws of the State of Delaware and has its headquarters

at 400 Raritan Center Parkway in Edison, New Jersey.  Victory is engaged in the creation, design,

manufacture, distribution, marketing, and sale of perfumes, fragrances, and other related products

---

[1] The defendants who have moved to transfer venue pursuant to 28 U.S.C. § 1404(a) or have joined in the motion to transfer venue shall be referred to as the "Transfer Defendants." Defendants Quality King, QKF, E Com, Perfumania, Model Reorg Inc. ("Model"), and Nussdorf are represented by the law firm Edwards Angell Palmer & Dodge LLP and shall be referred to as the "Quality King defendants."

[2] The three motions to transfer simply will be referred to as the "motion to transfer."

NOT FOR PUBLICATION

at wholesale worldwide and throughout the United States, including New Jersey, New York and Florida.

Perry Ellis is a publicly traded corporation organized and existing under the laws of the State of Florida and has its headquarters in Miami, Florida.  Feldenkreis is a citizen of the State of Florida, resides in Miami, Florida and is the Chairman and Chief Executive Officer of Perry Ellis.  Rene Garcia ("Garcia") is a citizen of the State of Florida, resides in Miami, Florida and works in various aspects of the perfume industry in the United States.

Parlux is a publicly traded corporation organized and existing under the laws of the State of Delaware and has its headquarters in Ft. Lauderdale, Florida.  Lekach is a citizen of the State of Florida, resides in Golden Beach, Florida, and was, until February 6, 2007, the Chairman of the Board of Directors and Chief Executive Officer of Parlux.  Buttacavoli is a citizen of the State of Florida and is presently the Chief Financial Officer of Parlux.

Quality King, a privately held corporation organized and existing under the laws of the State of Delaware, has its headquarters in Ronkonkoma, New York.  QKF is a privately held corporation organized and existing under the laws of the State of New York and has headquarters in Deer Park, New York.  Nussdorf is a citizen of the State of New York, resides in New York, New York and is the Chief Executive Officer of Quality King.  E Com is a publicly traded holding company organized and existing under the laws of the State of Florida and has its headquarters in Sunrise, Florida.  Perfumania is a corporation organized and existing under the laws of the State of Florida and has its headquarters in Sunrise, Florida.  Perfumania is a

**NOT FOR PUBLICATION**

subsidiary wholly-owned by E Com.  Model, a privately held corporation organized and existing under the laws of the State of New York, has its headquarters in New York, New York.

DFA is a privately held holding corporation organized and existing under the laws of the State of Florida with its headquarters in Miami, Florida.  Duty Free is a privately held corporation organized and existing under the laws of the State of Florida headquartered in Hollywood, Florida.  Falic Group is a limited liability company organized and existing under the laws of the State of Florida and has its headquarters in Hollywood, Florida.  Falic Group is a wholly owned subsidiary of DFA.  Simon Falic is a citizen of Florida of the State of Florida, resides in Bal Harbour, Florida, and is the chairman of Duty Free.  Jerome Falic is a citizen of the State of Florida, resides in Bal Harbour, Florida, and is the chief executive officer of Duty Free.

According to the Complaint, about August 15, 2006, Victory and Parlux signed a letter of intent ("Parlux Letter of Intent") whereby Parlux agreed to assign its license to distribute and sell Perry Ellis fragrances to Victory.  See First Amended Complaint at ¶ 64 (Dkt. Entry 7, filed Mar. 2, 2007) ("Am. Compl.").  The Perry Ellis Fragrance license ("Perry Ellis license") had a standard clause requiring the consent of the licensor, which could not be unreasonably withheld. See Am. Compl. at ¶ 65.  Perry Ellis refused consent without providing Victory any valid reason. See Am. Compl. at ¶ 88.  Victory alleges that the certain defendants conspired to cause Perry Ellis to unreasonably withhold its consent to transfer the license for the purpose and with the design of maintaining the wholesale and retail prices of Perry Ellis perfume at artificially high levels.  See Am. Compl. at ¶ 91.  On December 6, 2006, Perry Ellis repurchased the Perry Ellis

**NOT FOR PUBLICATION**

license from Parlux.  <u>See</u> Am. Compl. at ¶ 93.  On January 29, 2007, Perry Ellis sold the license

to the Falic Group.  <u>See</u> Am. Compl. at ¶ 99.

On January 24, 2007, Victory filed this action against seventeen defendants, the Perry

Ellis defendants, the Parlux defendants, the Duty Free defendants, the Quality King defendants

and individual defendant Garcia.  On March 2, 2007, Victory amended its complaint.   Victory

seeks relief against the defendants for violation of Section 1 of the Sherman Act (15 U.S.C. § 1),

violation the Donnelly Act (N.Y. Gen. Bus. Law §§ 340-347), interference with contract,

interference with prospective business advantage, breach of contract, fraud, deceit, unjust

enrichment, violations of the Florida RICO statute, deceptive trade practices, restraints of trade,

and unfair competition under the common law of the State of New Jersey and the other states of

the Union.

On May 18, 2007, Nussdorf filed his motion to dismiss the Complaint for lack of

personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

On May 15, 2007, the Perry Ellis defendants submitted two motions, one for dismissal of

the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (3) or, alternatively to transfer venue

pursuant to 28 U.S.C. § 1631, 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a), and the other for

dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).  The other defendants

have submitted similar motions for dismissal pursuant to either Fed. R. Civ. P. 12(b)(2) and (3),

Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b), or alternatively, to transfer venue pursuant to 28

U.S.C. § 1631, 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).  On May 18, 2007, the Parlux

defendants filed their motion for dismissal or, alternatively, to transfer the case to Florida

-5-

NOT FOR PUBLICATION

pursuant to 28 U.S.C. § 1631, 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). On May 18, 2007,

the Duty Free defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (3)

and (6) or, alternatively, to transfer the case pursuant to 28 U.S.C. § 1404(a).

On October 12, 2007, the defendants Quality, QKF, E Com and Perfumania filed their

response to the motion to transfer venue to Florida in which these defendants join the other

defendants in their pending motion to transfer this action to the Florida pursuant to 28 U.S.C. §

1404(a). Defendants Model and Nussdorf neither joins nor opposes the pending motions for

transfer. Defendant Garcia has not filed any response with regards to the various motions to

transfer. The Parlux defendants had requested that the Court consider the Transfer Defendants'

motions to transfer this action before ruling on the various parties' motions to dismiss pursuant to

Fed. R. Civ. P. 12(b) or 9(b).

The table below provides the defendants' position with regard to the motions to transfer

venue, their state of incorporation or residency, and principal place of business:

**Table:** **Defendants and Their Position on the Motion to Transfer**

| Defendant | State of Incorporation or Residence | Principal Place of Business | Join or Oppose Transfer to FL |
|---|---|---|---|
| 1.  Perry Ellis International, Inc. | Florida | Miami, FL | Transfer |
| 2.  George Feldenkreis (Individual) | Miami, FL | --- | Transfer |
| 3.  Rene Garcia (Individual) | Miami, FL | --- | No Response |
| 4.  Parlux Fragrances, Inc. | Delaware | Ft. Lauderdale, FL | Transfer |
| 5.  Ilia Lekach (Individual) | Golden Beach, FL | --- | Transfer |
| 6.  Frank Buttacavoli (Individual) | Florida | --- | Transfer |

NOT FOR PUBLICATION

| 7.  Quality King Distributors, Inc. | Delaware | New York | Join in Transfer |
|---|---|---|---|
| 8.  Quality King Fragrance, Inc. | New York | New York | Join in Transfer |
| 9.  E Com Ventures, Inc. | Florida | Sunrise, FL | Join in Transfer |
| 10. Perfumania Inc. | Florida | Sunrise, FL | Join in Transfer |
| 11. Model Reorg, Inc. | New York | New York | Neither joins nor opposes |
| 12. Glenn Nussdorf (Individual) | New York | --- | Neither joins nor opposes |
| 13. DFA Holdings, Inc. | Florida | Hollywood, FL | Transfer |
| 14. Duty Free Americas, Inc. | Maryland | Hollywood, FL | Transfer |
| 15. Falic Fashion Group, LLC | Florida | Hollywood, FL | Transfer |
| 16. Simon Falic (Individual) | Florida | --- | Transfer |
| 17. Jerome Falic (Individual) | Florida | --- | Transfer |

## DISCUSSION

Because Nussdorf neither joins nor opposes the Transfer Defendants' motion to transfer this action to Florida, the Court will discuss Nussdorf's motion to dismiss for lack of personal jurisdiction before the Transfer Defendants' motion to transfer.

### A.    Motion to Dismiss for Lack of Personal Jurisdiction

#### 1.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 4(e), federal "district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits." See Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir. 1993). New Jersey's long arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution. See N.J. Civ. Pract.

NOT FOR PUBLICATION

R. 4:4-4; Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir.1992); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981).  Therefore, the question of whether this Court has jurisdiction over the defendant is determined by federal constitutional law.  See Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990).

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)).  A court's exercise of jurisdiction can be either specific or general.

Specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Security Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).  A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citations omitted).  What constitutes minimum contacts varies with the "quality and nature of defendant's activity."  Hanson, 257 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation."  Keeton v. Hustler, 465 U.S. 770 (1984).

Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"

-8-

NOT FOR PUBLICATION

Burger King, 471 U.S. at 476 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir. 1998).  For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  See World-Wide Volkswagen, 444 U.S. at 292.  To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies.  Id.  Only in "rare cases [do the] minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities."  Asahi Metal Industry Co.. v. Super. Ct. of Cal., 480 U.S. 102, 116 (1987).

   If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic contacts" with the forum state.  Helicopteros, 466 U.S. at 416.  To establish general jurisdiction the plaintiff must show significantly more than mere minimum contacts with the forum state.  Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

   The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiffs.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 and n.9 (3d Cir. 1984).  See also Stranahan Gear Co. v. NL Industries, Inc., 800 F.2d 53, 58 (3d Cir.

NOT FOR PUBLICATION

1986) (cursory allegation reiterated in a sworn affidavit is insufficient to satisfy the plaintiff's

burden of proof).

>        2.      Analysis

In Nussdorf's declaration, Nussdorf states that he is a resident of and lives in the State of

New York.  See Declaration of Glenn Nussdorf at ¶ 4 ("Nussdorf Decl.").  He does not own or

rent property in New Jersey.  Nussdorf Decl. at ¶ 5.  Nor does he live, work or maintain an office

in New Jersey.  Nussdorf Decl. at ¶¶ 2-3.  The Complaint does not allege that Nussdorf has a

registered agent, a bank account, or a telephone number or post office box in New Jersey.

Moreover, there are no allegations in the Complaint that he conducted business or any other

activities in New Jersey.  Victory does not allege facts that this Court has general jurisdiction

over Nussdorf.  This Court does not have general jurisdiction over defendant Nussdorf because

Nussdorf, a non-resident, does not have "continuous and systematic contacts" with New Jersey

that permits this Court to exercise general jurisdiction over Nussdorf.  Helicopteros, 466 U.S. at

416.

Yet Victory argues that this Court has jurisdiction over Nussdorf based on his

involvement in defendants' conspiracy to fix prices of perfume throughout the United States in

violation of Section 1 of the Sherman Act.  Because Victory's cause of action is related to or

arises out of Nussdorf's alleged contacts with the forum, Victory is asking this Court to exercise

specific jurisdiction.  Helicopteros, 466 U.S. at 414 n.8.  For this Court to exercise specific

jurisdiction over Nussdorf, Victory must satisfy a two-part test.  Victory must show that Nussdorf

has constitutionally sufficient "minimum contacts" with New Jersey.  See Burger King, 471 U.S.

at 474.  Victory must also show that the Court's "the assertion of personal jurisdiction would

**NOT FOR PUBLICATION**

comport with 'fair play and substantial justice.'" <u>Burger King</u>, 471 U.S. at 476 (quoting

<u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 320 (1945)); <u>Pennzoil Products</u>, 149 F.3d at

201.  For personal jurisdiction to comport with "fair play and substantial justice," it must be

reasonable to require the defendant to defend the suit in the forum state.  <u>See</u> <u>World-Wide</u>

<u>Volkswagen</u>, 444 U.S. at 292.

Specifically, Victory alleges that Nussdorf and the Quality King defendants purchased

shares of Parlux with the objective of coercing Parlux into reneging the Parlux Letter of Intent

with Victory.  <u>See</u> Am. Compl. at ¶ 72.  Once defendants succeeded in their conspiracy, they

were able to maintain the wholesale and retail prices of the PERRY ELLIS and PARIS HILTON

perfumes at artificially high levels.  <u>Id.</u> at ¶¶ 68-72.  Nussdorf "is believed to have personally

benefitted from the conspiracy alleged in the Complaint filed in this matter, and was an active

and necessary member of that conspiracy."  <u>See</u> Declaration of Anil Monga at ¶ 10 ("Monga

Decl.").  Nussdorf's actions as a member of that conspiracy were intentional and expressly aimed

at New Jersey and had the effect of causing injury to Victory in New Jersey.  <u>Id.</u>

Nussdorf points to two main weaknesses in Victory's allegations of personal jurisdiction.

One, Victory is attempting to bootstrap jurisdiction over individual defendant Nussdorf based

upon the actions of the Quality King defendants, who are mainly corporate defendants.  As the

Supreme Court has held, "the requirements of <u>International Shoe</u> . . . must be met as to each

defendant."  <u>Rush v. Savchuk</u>, 444 U.S. 320, 332 (1980); <u>accord</u> <u>Waste Mgmt., Inc. v. The</u>

<u>Admiral Ins. Co.</u>, 138 N.J. 106, 127 (1994) ("jurisdiction over one defendant may not be based

on the activities of another defendant").  Second, the assertions of Victory's Chief Executive

Officer, Anil Monga, which were made upon information and belief, cannot support the exercise

-11-

NOT FOR PUBLICATION

of personal jurisdiction.  See Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n, 107

F.3d 1026, 1042 (3d Cir. 1997) (mere unsupported allegations of contacts or doing business in

the forum is clearly frivolous as jurisdictional support).

      Because Victory is contending that this Court has specific jurisdiction over Nussdorf

based on an antitrust conspiracy, both Victory and Nussdorf are correct that Imo Indus., Inc. v.

Kiekert AG governs this case.  155 F.3d 254 (3d Cir. 1998) (analyzing whether a court has

specific jurisdiction based on an intentional business tort under the United States Supreme

Court's Calder "effects test").  The Third Circuit "believe[d] that the Calder 'effects test' requires

the plaintiff to show the following:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be
> said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the
> forum can be said to be the focal point of the tortious activity.

Id. at 265-66 (explaining Calder v. Jones, 465 U.S. 783 (1984)).

      Victory relies heavily on this Court's two decisions in In re Bulk [Extruded] Graphite

Prods. Antitrust Litig. to support its argument that this Court has jurisdiction over Nussdorf.  In

re Bulk, C.A. No. 02-6030, 2006 U.S. Dist. LEXIS 45762 (D.N.J. Apr. 24, 2006) ("In re Bulk I")

and In re Bulk [Extruded] Graphite Prods. Antitrust Litig., No. 02-6030 (WHW), 2007 U.S. Dist.

LEXIS 54906 (D.N.J. Jul. 30, 2007) ("In re Bulk II").  The first element under the Calder "effects

test" is satisfied because an antitrust violation is a tort.  See In re Bulk I at *21.  Victory states

that where the claims asserted in a complaint arise under the federal antitrust laws, the

appropriate forum regarding second and third elements of the Calder test is the United States as a

whole.  In re Bulk I at *23.

NOT FOR PUBLICATION

As to the second element in the Calder effects test, Victory says that it has been harmed by the defendants' unlawful conspiracy which had as its target the fixing of prices of perfumes throughout the United States.  As a result of defendants' actions, Victory was forced to reduce its staff by over 50% and has lost other licensing opportunities including access to other fragrance inventory and the profit associated with the re-sale of same.  Monga Decl. at ¶ 5.  Victory has lost many of its customers because it no longer has access to brands it had in the past.  Id.  Victory argues that because "the entirety of the harm suffered by Plaintiff that resulted from the Personal Jurisdiction Defendants' tortious activity was felt within the United States, Plaintiff has also satisfied the second step in the Calder 'effects' analysis."  See Victory's Opposition Brief to Transfer Defendants' Motion to Transfer at 28 (Dkt. Entry 83, Aug. 8, 2007) ("Victory's Opp. Br.").

As to the third element in the Calder effects test, Victory alleges that all defendants engaged in a wide-ranging conspiracy to set prices and to deprive Victory of the benefits associated with the Perry Ellis license which was calculated to have effects throughout the United States.  This allegation satisfies the third element in the Calder "effects test" because it demonstrates that defendants aimed their tortious conduct at the forum, i.e., the United States.  Victory relies on In re Bulk II for the proposition that this Court has applied the Calder effects test to individuals based on their national contacts.  In re Bulk II at *17-29 (applying the Calder "effects test" to a German national in an international antitrust case).

This Court finds that its decision in In re Bulk II does not apply to the facts of this case.  In In re Bulk II, the plaintiff presented sufficient evidence, although thin, that would support the exercise of specific jurisdiction under the Third Circuit's IMO test.  In In re Bulk II, individual

NOT FOR PUBLICATION

defendant Koehler is a citizen and full time resident of Germany and conducts business from his office in Germany.  In re Bulk II at *2.  His personal contacts with the United States are not particularly extensive.  Id.  In In re Bulk II, This Court found that it was difficult to apply the IMO test strictly, explaining that:

> The Court's conclusion is buttressed by two considerations. First, the nature of price fixing in a conspiracy to fix prices in a global commodity like bulk graphite makes it difficult to identify a precise focus for tortious acts. Because the IMO test was designed for business torts, it is difficult to apply strictly the IMO test in the international antitrust context. The special character of an antitrust claim leads the Court to interpret more liberally the phrase "expressly aim[. . .] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." IMO, 155 F.3d at 266. To be sure, plaintiffs' evidence is thin, but at this stage of the proceedings it is sufficient to defeat a Rule 12(b)(2) motion.  Second, the jurisdictional inquiry here strongly implicates the merits of the case, and ultimately any final determination as to the question of personal jurisdiction is best deferred until after the parties have presented the full array of evidence.  See 5B Wright & Miller § 1351.

2007 U.S. Dist. LEXIS 54906, at *17.  The special circumstances and the difficulty in applying the IMO test to a German national alleged to having conspired to fix prices of a global commodity are not present in this case.  Because this Court will not apply a nationwide contacts test on Nussdorf on allegations of an antitrust violations, the Court will examine whether Nussdorf aimed his tortious conduct at New Jersey.  Emerson Elec. Co. v. Le Carbone Lorraine, C.A. No.: 05-6042, 2007 U.S. Dist. LEXIS 57809, *47-48 (D.N.J. Aug. 9, 2007) (explaining that the Clayton Act "authorizes nationwide, indeed worldwide, service of process against any corporation . . . There is no such provision for worldwide or nationwide service on individuals. Thus, the Court will not aggregate [individual defendant's] nationwide contacts to determine whether it has personal jurisdiction over him.").

NOT FOR PUBLICATION

The Court finds that Victory's claims that this Court has specific jurisdiction over Nussdorf are circular.  Victory is seeking to leap beyond its shadow.  It may be the case that this Court has specific jurisdiction over the corporate defendants under the <u>Calder</u> "effects test" when the forum is the United States.  But it is difficult for this Court to conclude that it has specific jurisdiction over individual defendant Nussdorf under the <u>Calder</u> "effects test" when the forum is New Jersey and when Victory's allegations are based upon information and belief.  Because Victory has not presented any factual allegations supporting that Nussdorf "aimed his tortious conduct at New Jersey," this Court does not know what particular conduct will allow this Court to exercise specific jurisdiction over Nussdorf.  <u>Wexco v. Diesel Equip.</u>, No. 06-civ-2106 (WHW), 2006 WL 2355396, at *7 (D.N.J. Aug. 14, 2006) (dismissing the complaint for lack of personal jurisdiction because plaintiff failed to "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.").

That Victory had suffered harm in New Jersey does not necessarily mean that Nussdorf aimed his tortious conduct at New Jersey.  <u>See</u> <u>Genesis Int'l Holdings v. US-Algeria Business Council</u>, No. 05-civ-4487, 2006 WL 1128729, at *4 (D.N.J. Apr. 27, 2006) (allegation that some harm occurred in New Jersey insufficient to show New Jersey was the "focal point" of the harm).

Victory has also requested that if this Court found that it did not have specific jurisdiction over Nussdorf, that this Court grant Victory jurisdictional discovery over Nussdorf.  The Third Circuit has permitted courts to grant jurisdictional discovery requests when a plaintiff has met its burden of making a "prima facie showing of personal jurisdiction."  <u>Mellon Bank (East) PSFS v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992).  In order to meet this burden, Victory "must establish 'with reasonable particularity sufficient contacts between the defendant and the forum

-15-

NOT FOR PUBLICATION

state.'" Veliz v. Americorp Builders, Inc., No. 06-civ-4363, 2007 WL 1746248, at *4 (D.N.J.

June 15, 2007).  Further, "[w]here the defendant is an individual, the presumption in favor of

discovery is reduced." Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n, 107 F.3d

1026, 1042 (3d Cir. 1997).  This Court will not grant jurisdictional discovery over Nussdorf

because Victory has failed to present factual allegations that would suggest "with reasonable

particularity" the possible existence of the requisite "contacts between [the party] and the forum

state." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003).

The Court dismisses the Complaint without prejudice as to defendant Nussdorf.

**B.      Motion to Transfer Venue to Florida**

**1.      Standard of Review**

For "the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U .S.C. § 1404(a).  An action might have been brought in another district, if (1) venue is

proper in the transferee district, and (2) the transferee district can exercise jurisdiction over all

the defendants. Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970).

In ruling on a motion under this provision, the court is free to consider "all relevant

factors," and the Third Circuit directs district courts to a list of private and public interest factors.

See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citing 15 Wright, Miller &

Cooper, Federal Practice and Procedure: § 3848, at 385 (2d ed. 1986)).  Private factors include:

(1) the plaintiff's preferred forum; (2) the defendant's preferred forum; (3) where the claim arose;

(4) the convenience of the witnesses to the extent they would be unavailable at trial in one of the

fora; and (5) the availability of documents and other evidence. See id.  Public factors include: (1)

**NOT FOR PUBLICATION**

the enforceability of the judgment; (2) practical considerations that make trial easier or less

expensive; (3) the relative administrative difficulty related to court congestion; (4) the relative

importance of the fora in deciding the controversy; and (5) the familiarity of the trial judge with

the applicable state law in diversity cases.  Id.

### 2.      Analysis

Because this Court has dismissed the Complaint for lack of personal jurisdiction over

Nussdorf, the motion to transfer is relevant only to the remaining sixteen defendants.  Fourteen of

these defendants, the Transfer Defendants, have the burden of demonstrating that litigating this

action in Florida is more appropriate than here.  Jumara, 55 F.3d at 879.

### a.      Where the Action "Might Have Been Brought"

The Transfer Defendants must show that Florida is venue where this action "might have

been brought."  28 U .S.C. § 1404(a); Shutte, 431 F.2d at 24.  In other words, venue must be

proper and the transferee court must have subject matter jurisdiction over the action and personal

jurisdiction over the defendants.  See 15 Wright, Miller & Cooper, Federal Practice and

Procedure: § 3845, at 48-57 (3d ed. 2007).  None of the parties contest that Florida is an

improper venue.[3]  Even Victory "concedes that venue over this action would also be appropriate

in the Southern District of Florida."  See Victory's Opp. Br. at 11 n.4.  Nevertheless, this Court

will examine the merits of whether venue for this action is proper in Florida.

Florida is a venue where this action may have been brought in part because much of the

alleged conduct supporting Victory's Complaint occurred in Florida.  In July 2006, Victory sent

to Parlux's Florida office a proposed letter of intent to acquire the Perry Ellis license from

---

[3] During oral arguments, Victory was willing agree to the transfer of this action to Florida
if all defendants, including Nussdorf, submitted to the personal jurisdiction of Florida.

NOT FOR PUBLICATION

Parlux.  <u>See</u> Affidavit of Ilia Lekach at ¶ 11 ("Lekach Aff."); Affidavit of Frank Buttacavoli at ¶

11 ("Buttacavoli Aff.").  During a meeting in Florida, Parlux's Board of Directors reviewed the

offer and decided to agree to the letter of intent.  <u>See</u> Lekach Aff. at ¶ 14; Buttacavoli Aff. at ¶

14.  On August 18, 2006, Parlux sent a letter to Perry Ellis in Florida requesting Perry Ellis's

consent to the transfer of the Perry Ellis license to Victory.  <u>See</u> Am. Compl. at ¶ 66.  Parlux and

Perry Ellis engaged in discussion concerning the transfer of the Perry Ellis license in Florida.

<u>See</u> Perry Ellis's Brief in Support of Motion to Transfer (Dkt. Entry 48-2, filed May 17, 2007)

("Perry Ellis's Transfer Br.").  On October 9, 2006, Perry Ellis sent from its Florida office to

Parlux's Florida office, informing Parlux that it refuses to consent to the transfer of the Perry

Ellis license to Victory.  <u>See</u> Perry Ellis's Transfer Br. at 4.  After extensive negotiations between

Perry Ellis and Parlux in Florida, Parlux sold its licensing rights back to Perry Ellis on December

6, 2006.  <u>See</u> Perry Ellis's Transfer Br. at 4.

   Florida would have subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1337 over the federal antitrust claims under Section 1 of the Sherman Act (15 U.S.C. § 1).  28

U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or

proceeding arising under any Act of Congress regulating commerce or protecting trade and

commerce against restraints and monopolies . . .").  Florida would have jurisdiction over the

remaining claims for relief under principles of pendent and supplemental jurisdiction under 28

U.S.C. § 1367.  28 U.S.C. § 1367 ("Except as provided in subsections (b) and (c) or as expressly

provided otherwise by Federal statute, in any civil action of which the district courts have

original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims

**NOT FOR PUBLICATION**

that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . . ").

Florida has personal jurisdiction over the remaining sixteen defendants. Perry Ellis and Feldenkreis, both citizens of Florida, have conceded that Florida has personal jurisdiction over them. See Perry Ellis's Transfer Br. at 2 n.1. Garcia testified in his affidavit to his motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction that he is a citizen of Florida and resides in Miami, Florida. See Affidavit of Rene Garcia at ¶ 5 (Dkt. Entry 53, Ex. A, filed May 18, 2007) ("Garcia Aff."). DFA, Duty Free, FFG, Simon Falic and Jerome Falic, all citizens of Florida, have conceded that Florida has personal jurisdiction over them. See Duty Free defendants' Brief in Support of Motion to Transfer at 2 (Dkt. Entry 52-3, filed May 18, 2007) ("Duty Free Transfer Br."). Parlux, Lekach and Buttacavoli admit that all three are residents of Florida. See Exhibit A to Parlux defendants' Brief in Support of Motion to Transfer (Dkt. Entry 51-2, filed May 18, 2007) ("Parlux's Transfer Br.").

On October 12, 2007, the QKD, QKF, E Com and Perfumania filed their response to the motion to transfer venue to Florida in which these defendants join the other defendants in their pending motion to transfer this action to Florida pursuant to 28 U.S.C. § 1404(a). See Quality King defendants' Response at 2 (Dkt. Entry 99, filed Oct. 12, 2007). By joining the motion to transfer this action to Florida, Quality King, QKF, E Com and Perfumania are arguing that Florida is a proper venue because Florida has jurisdiction over them. By joining the motion to transfer, the Court finds that these defendants have conceded that Florida has jurisdiction over them. Florida will have personal jurisdiction over the remaining corporate defendant Model because section 12 of the Clayton Act establishes nationwide personal jurisdiction in antitrust

**NOT FOR PUBLICATION**

actions over corporations that have minimum contacts with the United States.  15 U.S.C. § 22 (2007).

This Court finds that Florida is a proper venue for this action.

> **b.      Whether Florida Is More Appropriate Than New Jersey**

A determination of whether to transfer must incorporate "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  <u>Jumara</u>, 55 F.3d at 879.  "Transfer analysis under Section 1404 is flexible and must be made on the unique facts presented in each case."  <u>McGee & Co., Inc. v. United Arab Shipping Co.</u>, 6 F. Supp. 2d 283, 288 (D.N.J. 1997).  "While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a)."  <u>Jumara</u>, 55 F.3d at 880.

The first two private factors are the parties' respective choices of forum.  Victory is a Delaware corporation with its principal place of business in Edison, New Jersey.  Because Victory chose its home forum, its choice should be granted greater deference.  <u>Lawrence v. Xerox Corp.</u>, 56 F. Supp. 2d 442. 452 (D.N.J. 1999) (where plaintiff brings suit in home forum, choice of forum is "entitled to greater deference.").

Fourteen of the remaining sixteen defendants have chosen to transfer this action to Florida.  Defendants argue that Victory's choice is entitled to little deference because almost every single operative event directly giving rise to its alleged causes of action occurred outside New Jersey.  <u>See</u> <u>Sun Chem. Corp. v. Markem Corp.</u>, No. 05-2564, 2006 U.S. Dist. LEXIS 3469, at *6 (D.N.J. Jan. 30, 2006) (plaintiff's "choice of forum is entitled to less because a substantial part of the events and operative facts . . . did not occur in New Jersey"); <u>LG Elecs. Inc. v. First</u>

**NOT FOR PUBLICATION**

Int'l Computer of Am., Inc., 138 F. Supp. 2d 574, 590 (D.N.J. 2001) ("[W]hen the central facts of the lawsuit occur outside the forum state, a plaintiff's choice of forum is entitled to less deference").

Defendants refer to the following alleged conduct which occurred outside New Jersey. The alleged key conspiracy meeting took place in New York City. See Am. Compl. at ¶ 83. Nearly all of the significant events that allegedly gave rise to this action occurred in Florida. As examples:

(1) Victory sent its proposed letter of intent to Parlux's Florida office seeking an assignment of the Perry Ellis license. See Parlux's Transfer Br. at 5.

(2) Nearly all the dealings with respect to the letter of intent were handled on behalf of Victory by a resident of Florida. See Parlux's Transfer Br. at 5.

(3) Parlux agreed to the letter of intent from its Florida headquarters. See Parlux's Transfer Br. at 5.

(4) Parlux sent a letter from its Florida headquarters to Perry Ellis's Florida headquarters in Florida requesting Perry Ellis's consent to the assignment to Victory. See Affidavit of George Feldenkreis (Dkt. Entry 83, filed May 17, 2007) ("Feldenkreis Aff.").

(5) Perry Ellis discussed the proposed assignment internally and with Parlux representatives who resided in Florida, including Parlux's broker Lucien Lallouz. Those internal and external discussions occurred in Florida. Feldenkreis Aff. at ¶ 5.

(6) From its Florida headquarters, Perry Ellis declined to consent to the transfer of the license to Victory. Feldenkreis Aff. at ¶ 7.

(7) The negotiations leading up to the agreement between Perry Ellis and Parlux, wherein Perry Ellis agreed to purchase the assets and licensing rights of Parlux and the eventual execution of that agreement occurred in Florida. Feldenkreis Aff. at ¶ 8.

(8) The eventual granting of the new license to FFG, and the negotiations leading up to that transaction, occurred in Florida. Feldenkreis Aff. at ¶ 9.

**NOT FOR PUBLICATION**

(9) All original documents in Perry Ellis's possession that relate to the claims asserted in this lawsuit are maintained in Florida. Feldenkreis Aff. at ¶ 11.

Defendants conclude that because the central and underlying facts of this action took place outside of Victory's home forum, Victory's choice should be given less deference.

Victory rebuts with the following list of alleged conduct that gave rise to this action occurred in New Jersey:

(1) Perry Ellis manufactures, advertises, and distributes apparel and accessories throughout the United States, including New Jersey. See Am. Compl. ¶ 9.

(2) Parlux's PERRY ELLIS, PARIS HILTON, and GUESS? perfumes are sold through the United States, including New Jersey. See Am. Compl. ¶ 14.

(3) Perfumania operates retail stores throughout the United States, including New Jersey. See Am. Compl. ¶ 23.

(4) Products supplied by the Quality King Group are available in outlets in the State of New Jersey. See Am. Compl. ¶ 36.

(5) Victory, from its New Jersey offices, sent the Parlux Binding Letter of Intent to Parlux. See Am. Compl. ¶ 64.

(6) The participants in the conspiracy fixed the prices of PERRY ELLIS perfumes throughout the United States, including New Jersey. See Am. Compl. ¶¶ 68-70.

(7) The representations concerning Perry Ellis's willingness to consent to the assignment of the Perry Ellis license to Victory were made to individuals in New Jersey and relied upon in New Jersey. See Am. Compl. ¶ 78.

(8) The August 30, 2006 Addendum to the Parlux Binding Letter of Intent was sent from Victory's New Jersey offices. See Am. Compl. ¶ 79.

(9) A meeting that took place between Victory and Perry Ellis at Victory's New Jersey offices. See Am. Compl. ¶ 81.

(10) The false statements made by Perry Eliis and Feldenkreis were made to Mr. Monga, Victory's CEO, and other individuals in New Jersey, and were calculated to have an effect there. See Am. Compl. ¶ 119.

NOT FOR PUBLICATION

Victory asserts that a substantial number of acts took place in New Jersey.  Furthermore, Victory was harmed by defendants' conspiracy in New Jersey.

The Court agrees with defendants' position that most of the significant conduct occurred outside of New Jersey and Victory's choice of forum is entitled to less deference.  Most of Victory's allegations that defendants do business in United States, including New Jersey, support why this Court has personal jurisdiction over the corporate defendants.  The only acts alleged that may give rise to antitrust violations and have occurred in New Jersey are one meeting that took place in New Jersey and a few phone calls and letter correspondences between Victory in New Jersey and certain defendants in Florida.  Fortray v. Univ. of Miami, No. 93-3443, 1994 WL 62319 (D.N.J. Feb. 17, 1994) (transferring action to Florida because "[n]otwithstanding certain representations and promises made . . . in New Jersey via a letter and personal visits, the balance of the alleged wrongdoings occurred in Florida.").  The majority of the conspiratorial acts or acts in furtherance of the conspiracy, meetings between the Parlux defendants, the Perry Ellis defendants, the Duty Free defendants and the Quality King defendants, occurred in either New York or Florida.  Because the Court finds that Victory is entitled to less deference, the Court will examine the remaining Jumara private and public factors.

The Florida defendants state that their employees, who are potential witnesses, are in Florida and their documents are located in Florida.  Because most of the negotiations took place in Florida, almost all the relevant witnesses and evidence are located in Florida.  Victory counters that its employees, who are potential witnesses, are in New Jersey and its documents are located in New Jersey.  Victory also states that it is a smaller company than the defendants so its burden

**NOT FOR PUBLICATION**

to litigate this action in Florida is disproportionately greater than defendants' burden of litigating here.

This Court gives little weight to the location of documents because of the ease in which documents may be produced through electronic discovery. The location of documents only plays a role "where the documents 'may not be produced in the [] forum.'" Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560, 568 (D.N.J. 2000) (quoting Jumara, 55 F.3d at 879). "[W]hen documents can be transported and/or easily photocopied, their location is entitled to little weight." Clark v. Burger King Corp., 255 F. Supp. 2d 334, 339 (D.N.J. 2003).

The location of witnesses, especially those who outside this Court's subpoena powers, are of more concern. LG Elecs., Inc., 138 F. Supp. 2d at 590-91 (granting defendant's motion to transfer venue in part due to assertion that potential non-party witnesses would not be subject to process in transferor forum, but would be subject to compulsory process in transferee forum). Perry Ellis identified two witnesses who live in Florida. Victory's key representative during the negotiations concerning the proposed assignment, Mark Young, lives in South Florida and may not amenable to this Court's subpoena power. Parlux' broker during the negotiations with Perry Ellis is Lucien Lallouz, who resides in South Florida. See Feldenkreis Aff. at ¶ 5. Mr. Lallouz would be subject to compulsory process in Florida, but may not be subject to compulsory process in New Jersey. Fed. R. Civ. P. 45(b)(2).

Victory is correct to point out that the location of a party's witnesses should be given little or no weight "because the parties are obligated to procure their attendance at trial." Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 77 F. Supp. 2d 505, 510 (D. Del. 1999). Despite Parlux stating that Lucien Lallouz may not be amenable to this Court's subpoena powers, it is

**NOT FOR PUBLICATION**

unclear to the Court whether these witnesses are non-party witnesses and may not want to

volunteer their appearances.  Neither side has identified other potential non-party witnesses so

this Court will not speculate on the convenience of witnesses factor.

      The Third Circuit has explained that convenience to the parties is to be determined by

reference to the parties' "relative physical and financial conditions."  <u>Jumara</u>, 55 F.3d at 879.

Although Victory claims that it is relatively weaker compared to defendants, this Court's analysis

must account for the relative physical and financial conditions as to each defendant.  Victory has

admitted that it regularly does business in Florida.  "Victory is engaged in the creation, design,

manufacture, distribution, marketing, and sale of perfumes, fragrances, and other related products

at wholesale worldwide and throughout United States, including the States of New Jersey, New

York, and Florida."  Am. Compl. ¶ 6.

      It may be the case that the ten corporate defendants are in a better relative physical and

financial condition to litigate this case in New Jersey than Victory in Florida.  It is not the case

with six of the seven individual defendants who reside in Florida.  Individual defendants

Feldenkreis, Garcia, Lekach, Buttacavoli, Simon Falic an Jerome Falic, who all reside in Florida,

have moved to dismiss the Complaint for lack of personal jurisdiction.  In their declarations, each

of them declare that they do not conduct business regularly in New Jersey .  While it is clear that

Victory does regular business in Florida, it is unclear whether all or any of the individual

defendants do regular business in New Jersey.  The Court finds that Victory is in a better position

to litigate this action in Florida than the individual defendants here.

      As to the public factors, some of the factors are equally balanced while other factors favor

transfer.  The Court finds that Florida shares an equal interest in adjudicating this action with

**NOT FOR PUBLICATION**

New Jersey.  Victory has its principal place of business in New Jersey.  Thirteen of the sixteen

defendants are either Florida corporations, have their principal place of business in Florida or are

individuals residing in Florida.  Florida has an equal interest in enforcing federal claims of

antitrust violations as does New Jersey.  While New Jersey would have a greater interest in

adjudicating claims based on violations of the New Jersey Consumer Fraud Act, Florida would

have a greater interest in adjudicating claims based upon the breach of the Perry Ellis license and

the Parlux Letter of Intent, which are governed by Florida law.  That a court may have to apply

the law of another state is insufficient to support granting a motion to transfer.  Traa v. Marriott

Corp., No. 05-4290, 2006 WL 2319182 (D.N.J. Aug. 9, 2006); see also Calkins v. Dollarland,

Inc., 117 F. Supp. 2d 421, 429 (D.N.J. 2000) ("While familiarity of the forum court with the

applicable law is a consideration, it is not enough [to warrant granting a motion to transfer] that a

court might have to apply another jurisdiction's law").  Although Parlux points out that Florida

may have a lighter docket than New Jersey, this Court will not be burdened to hear this case.

        The factor that swings in defendants' favor is the practical consideration of the expense of

litigating and trying this case in New Jersey versus Florida.  Victory argues that transferring this

action would have no net efficiency because the transfer would only shift the burden from

defendants to Victory.  "[I]t is well settled that a court will not order transfer of a case if doing so

merely shifts the burden from one party to another."  United States Fire Ins. Co. v. Aldworth Co.,

No. Civ. 04-4963, 2005 WL 1522280, at *4 (D.N.J. Jun. 28, 2005).  However, the Court

disagrees that transferring this case would merely shift the burden without net effects.

        The defendants reiterate the point that thirteen of the sixteen remaining defendants are

residents of Florida.  Correspondingly, their employees, who are potential witnesses, are in

-26-

**NOT FOR PUBLICATION**

Florida.  Only Victory resides in New Jersey.  Litigating this action in New Jersey would cause coordination and availability problems among the sixteen defendants and their witnesses if and when this Court holds hearings on motions and the trial.

As another practical matter, the Court notes that during the December 5, 2007 hearing on the motion to transfer, the majority of the Florida defendants' attorneys had traveled from Florida to New Jersey.  Granted that both defendants' and Victory's attorneys come from national law firms with offices located in or near New Jersey and Florida, the Court considers the costs imposed on both sides' clients.  That thirteen of the sixteen defendants reside in Florida, their witnesses reside in Florida and their attorneys reside in Florida lead this Court to conclude that it is significantly more expensive and logistically more difficult to litigate this action in New Jersey than Florida.

This is not a case involving one New Jersey plaintiff against one, two, three, four, five or six Florida defendants.  It is a case involving one New Jersey plaintiff against thirteen Florida defendants and four New York defendants, where one New York defendant has been dismissed and two other New York defendants have joined in the motion to transfer venue.  The expense of litigating this case in New Jersey is considerably magnified by those numbers, especially when this Court takes account of the expense and inconvenience to parties, the witnesses and the parties' counsel.  This Court finds that Florida is a more appropriate forum for this action.

**NOT FOR PUBLICATION**

## CONCLUSION

The Court grants Nussdorf's motion to dismiss the Complaint for lack of personal jurisdiction without prejudice.  The Court transfers this action to the United States District Court for the Southern District of Florida.

January 2, 2008

<u>**s/William H. Walls**</u>
United States Senior District Judge